IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

v.

CHRIS NIXON,

*Defendant.*

Criminal No. 1:19-mj-237

**AFFIDAVIT IN SUPPORT OF**
**ARREST WARRANT AND CRIMINAL COMPLAINT**

I, Steve Scully, being duly sworn, depose and state as follows:

**Introduction and Agent Background**

1. I have been a U.S. Federal Agent since June 2012. I have been an agent with the United States Postal Service (USPS) Office of Inspector General (OIG) for five years. I have completed 12 weeks of basic investigative training, which included various aspects of federal law enforcement training related to the investigation of narcotics-related offenses. I have completed numerous narcotics investigation training and conducted numerous narcotics investigations, specifically involving Postal Service employees. I have participated in multiple interdictions, controlled deliveries, seizures, and search warrants, which have resulted in criminal arrests and prosecutions.

2. This affidavit is intended to show only that there is sufficient probable cause for the affidavit in support of the criminal complaint and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation,

1

communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

3. The Controlled Substances Act ("CSA") prescribes federal U.S. drug policy under which the manufacture, importation, possession, use, and distribution of certain substances is regulated. The CSA classifies drugs, substances or chemicals into five schedules. The drugs, substances, or chemicals with no current acceptable medical use and a high potential for abuse are classified as Schedule I drugs. Schedule I drugs are considered to be the most dangerous drugs of all the drug schedules, given the potential for severe psychological or physical dependence. Marijuana and tetrahydrocannabinols ("THC") are classified as Schedule I controlled substances, as defined by 21 U.S.C. § 812.

4. Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Pursuant to 21 U.S.C. § 846, it is unlawful for anyone to attempt or conspire to commit a violation of 21 U.S.C. § 841(a)(1).

5. Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that the defendant has committed violations of 21 U.S.C. §§ 841(a)(1) and 846.

## Statement of Probable Cause

6. In October 2018, the U.S. Postal Service (USPS), Office of Inspector General (OIG) received information that Arlington, VA 22204 Postal Service City Carrier Chris NIXON may be participating in the diversion of parcels believed to contain narcotics. On multiple occasions from November 2018 to the present, NIXON received parcels on his Postal Service route

believed to contain narcotics. On each of these occasions, multiple parcels were sent from neighboring ZIP Codes in California to multiple addresses in the Eastern District of Virginia and were paid for in cash by the sender.

7. On January 8, 2019, a USPS OIG database identified four parcels coming from ZIP Codes 91604, 91316, 91356, 91367 to NIXON's Postal Service route to be delivered on January 9, 2019. On January 9, 2019, at approximately 3:45 p.m., agents witnessed NIXON enter a secluded apartment complex parking lot. Moments later, agents witnessed an individual exit a green Ford Expedition and walk to the parking lot where NIXON was parked. At approximately 3:50 p.m., surveillance video from NIXON's USPS vehicle shows NIXON removing the identified parcels from the back of his USPS vehicle. Minutes later, an individual exited the same secluded apartment complex parking lot and returned to the Ford Expedition carrying multiple parcels. The Ford Expedition was identified as belonging to Co-Conspirator 1 (CC-1). CC-1's known address is not located in NIXON's Postal Service route.

8. On February 24, 2019, a USPS OIG database identified three parcels coming from ZIP Codes 91604 and 91316, to NIXON's Postal Service route. On February 25, 2019, NIXON was approached by an individual in a green Ford Expedition. This vehicle had been previously confirmed as belonging to CC-1. The driver of the Expedition exited the vehicle and agents confirmed it to be CC-1. NIXON retrieved three parcels from the rear of his USPS vehicle and handed them to CC-1. CC-1 placed the parcels in the driver side rear door of the Ford Expedition. CC-1's known address is not located in NIXON's Postal Service route.

9. On April 30, 2019, a USPS OIG database identified seven parcels coming from ZIP Codes 91604, 91607, 91601, 91403, to NIXON's Postal Service route. That evening, agents

were able to identify six of the seven incoming parcels at a Post Office located at Dulles, VA. One parcel was seized and the remaining five were documented and returned to the mail stream.

10. On May 1, 2019, agents interviewed NIXON at the Arlington, VA 22204 Post Office. NIXON was read his Miranda warning and signed a waiver form indicating he agreed to speak with agents without a lawyer present. According to NIXON, NIXON met CC-1 in approximately 2014 through mutual friends. Approximately one year ago, CC-1 asked if he were to have parcels sent to NIXON's Postal Service route, would NIXON ensure they do not reach their indicated delivery address and, instead, be given directly to CC-1. In exchange CC-1 would provide NIXON with free marijuana. NIXON agreed and provided delivery addresses that CC-1 could use for the parcels. On the day of expected delivery, CC-1 would text NIXON with the number of parcels expected. NIXON would contact CC-1 with confirmation of the arrival of the parcels and CC-1 would provide an approximate time that he would retrieve them from NIXON while NIXON worked his Postal Service route. NIXON was aware that CC-1's parcels contained marijuana. NIXON stated the five parcels previously identified by agents on April 30, 2019, were destined for CC-1. CC-1 contacted NIXON multiple times on May 1 in an attempt to obtain the parcels. NIXON returned the parcels to the Post Office and did not deliver them to CC-1.

11. Historical data contained in USPS databases show that approximately 168 parcels processed by USPS from January 2018 to the present had similar characteristics as the five parcels seized on May 2, 2019. They all were sent from the same area in California to NIXON's Postal Route and were paid for in cash by the sender. Many of the parcels had the same return address and many of the recipient addresses were used multiple times. The five parcels that were opened and seized on May 2, 2019, were found to contain approximately 88.68 pounds of

product labeled as THC. On December 3, 2018, the United States Postal Inspection Service seized a similar package sent by the same sender as the sender of the May 2 packages to an address within the Eastern District of Virginia, but not on NIXON's Postal Route. That package was found to contain 9 pounds and 5.9 ounces of THC edibles.

## Conclusion

12. Based on the facts set forth above, there is probable cause to believe that the defendant has committed the felony crime of conspiracy to possess with the intent to distribute THC, a Schedule I a controlled substance, in violation of 21 U.S.C. § 846.

_____
Steven A. Scully
Special Agent
United States Postal Service, Office of Inspector General

Sworn to and subscribed to before me this 31st day of May, 2019, in Alexandria, Virginia.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge